LUCY RYALLS *vs.* MECHANICS' MILLS.

Bristol.    October 24, 1889. — November 27, 1889.

Present : DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Master and Servant — Negligence — Defective Machinery — Employers'*
*Liability Act — Cumulative Remedy — Statutory Notice.*

The St. of 1887, c. 270, § 1, cl. 1, giving to an employee exercising due care a right
   of action for an injury caused by "any defect in the condition of the ways,
   works, or machinery connected with or used in the business of the employer,"
   arising from the employer's negligence, or that of any one in his service in-
   trusted with the duty of seeing that such ways, works, or machinery are in
   proper condition, is not a bar to an action at common law, brought by an
   employee for personal injuries caused by a defect in such machinery, for
   which such an action might have been maintained before the passage of that
   statute.
The notice required by the St. of 1887, c. 270, § 3, so far as applicable to a cause
   of action under § 1, cl. 1, applies only to cases, if any, within that clause, in
   which there is no common law right of action, unless a plaintiff with a remedy
   at common law should insist upon relying upon the statute alone.

HOLMES, J.    This is an action for personal injuries caused to an employee by a defect in the condition of the machinery used in the business of her employer. The declaration is framed without reference to the Employers' Liability Act (St. 1887, c. 270), and the plaintiff has had a verdict. We must take it, therefore, that the defect was of such a kind that the defendant would have been liable under our decisions unless the above statute has cut down the plaintiff's common law rights. The question raised by the report is, whether since that statute an employee's right of action in cases like this is wholly statutory, and whether the plaintiff is barred because she did not give the notice of the time, place, and cause of the injury without which, by § 3, no action for the recovery of compensation for injury under that act shall be maintained. It will be seen on reading

the two statutes that ours is copied verbatim, with some variations of detail, from the English statute (43 & 44 Vict. c. 42). Therefore it is proper, if not necessary, to begin by considering how the English act had been construed before our statute was enacted. *Commonwealth* v. *Hartnett*, 3 Gray, 450. *Pratt* v. *American Bell Telephone Co.* 141 Mass. 225, 227. Looking first at its general scope, it was plain that it did not attempt to codify the whole law as to the liability of employers. Roberts & Wallace, Employers' Liability, (3d ed.) 208. It was regarded as an act passed in favor of workmen. *Gibbs* v. *Great Western Railway*, 12 Q. B. D. 208, 211. See *Walsh* v. *Whiteley*, 21 Q. B. D. 371, 380. It was held to be intended only to remove certain bars to their right to sue for personal injuries based on their relation to their employer. *Griffiths* v. *Dudley*, 9 Q. B. D. 357. *Weblin* v. *Ballard*, 17 Q. B. D. 122, 125. *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, 692. *M'Avoy* v. *Young's Paraffin Co.* 9 Ct. of Sess. Cas. (4th series), 100, 103. *Morrison* v. *Baird*, 10 Ct. of Sess. Cas. (4th series), 271, 277. *Robertson* v. *Russell*, 12 Ct. of Sess. Cas. (4th series), 634, 638. But these bars were removed only in the cases specified in the act; *Griffiths* v. *Dudley*, 9 Q. B. D. 357, 362 ; *Gibbs* v. *Great Western Railway*, 12 Q. B. D. 208; Roberts & Wallace, Employers' Liability, (3d ed.) 241, 242 ; and defences not based upon the relation of master and servant were left unaffected, although not mentioned. *Weblin* v. *Ballard*, 17 Q. B. D. 122. *Thomas* v. *Quartermaine*, 18 Q. B. D. 685.

In agreement with these views, and also with the fact that the qualifications of §§ 1 and 2, the limit of compensation set by § 3, the requirement of notice and limitation of time for suing in § 4, and the direction as to the court where the action shall be brought in § 6, are all confined to proceedings " under this act," the text-books argued and affirmed that the workman's common law rights remained unimpaired. Roberts & Wallace, Employers' Liability, (3d ed.) 207–209, 331. Fraser, Master and Servant, (3d ed.) 172. Spens & Younger, Employer and Employed, 130, 131. Macdonell, Master and Servant, 659, 660. The practice of proceeding under the statute and at common law in the same action seems to have been settled in Scotland ; *M'Donagh* v. *MacLellan*, 13 Ct. of Sess. Cas. (4th series), 1000,

1003; *Morrison* v. *Baird,* 10 Ct. of Sess. Cas. (4th series), 271; Roberts & Wallace, Employers' Liability, (3d ed.) 209; and the intelligible doubts which may have been felt as to the reasoning in *Morrison* v. *Baird,* touching the right to remove the whole action to the Court of Session under § 6, (Spens & Younger, Employer and Employed, 173,) did not affect the continued existence of common law rights. We shall add one or two references more specifically applying to this case after we have stated the substance of § 1.

By § 1 of the English act, when " personal injury is caused to a workman (1) by reason of any defect in the condition of the . . . machinery, . . . used in the business of the employer; . . . the workman . . . shall have the same right of compensation and remedies against the employer as if the workman had not been a workman of nor in the service of the employer, nor engaged in his work." This right, it will be seen, is given by this section without qualification. But then § 2 goes on to say that he shall not be entitled " under this act " to any right of compensation or remedy against the employer, under § 1, cl. 1, " unless the defect therein mentioned arose from, or had not been discovered or remedied owing to, the negligence of the employer, or of some person in the service of the employer, and intrusted by him with the duty of seeing that the . . . machinery . . . [was] in proper condition."

Standing in this form, it was tolerably clear that § 1, cl. 1, was not intended, in connection with § 2, to codify as well as to enlarge a rule of the common law, and to make all actions by workmen for defects in machinery statutory, but that, like the other clauses of § 1, it purported at most only to do away with the defences that the workman impliedly took upon himself the ordinary manifest risks of his employment ( *Weblin* v. *Ballard,* 17 Q. B. D. 122; *Thomas* v. *Quartermaine,* 18 Q. B. D. 685; *Yarmouth* v. *France,* 19 Q. B. D. 647, 654; see p. 667); or that the defect was due to the negligence of the person intrusted by the master with the supervision of the machinery, and that he was the plaintiff's fellow servant, the ground on which the defendant escaped in *Wilson* v. *Merry,* L. R. 1 H. L. Sc. 326. *Griffiths* v. *Dudley,* 9 Q. B. D. 357. *Morrison* v. *Baird,* 10 Ct. of Sess. Cas. (4th series), 271. The purport of § 1 was

made clearer by the words "under this act," just quoted from § 2, and the intent of § 2 obviously was to cut down and to limit the unqualified provisions of § 1 to cases where there had been negligence on the part either of the employer or of the person intrusted by him. See *Stuart* v. *Evans*, 49 L. T. (N. S.) 138; *S. C.* 31 W. R. 706; *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, 693.

It seems to follow that, as suggested by Roberts & Wallace, Employers' Liability, 208, the requirement of notice in § 4, in order to maintain an action "under this act," does not mean that a workman is "to lose all right of action because he gives no notice of injury, even where the employer himself is the culpable person, and the workman is at death's door during the whole of the six weeks." In *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, 702, Fry, L. J., cites with approval, although to a different end, another passage from page 252 of the same work, a part of which is as follows: "Suppose that, altogether through the carelessness of the employer, or of the persons entrusted with the duty of looking after the ways, etc., a foot-bridge becomes and is allowed to remain in a defective and dangerous condition, so that a workman who is injured whilst using the bridge in the course of his duty and ignorant of its condition would clearly have a right to sue the employer in the first case at common law or under the Act, and in the second under the Act."

Whether correct or not, this was the state of comment upon and construction of the English statute when the Massachusetts act was passed, copying its words very closely. We cannot deal with the latter quite on the same footing as if the Legislature had framed it in their own language, used for the first time. We must assume that they were content with the expounded meaning of the words which they adopted. But it would not need the aid of previous exposition to show that the main purpose of the statute, as the title intimates, is to extend the liability of employers in favor of employees, that it does not attempt to codify the whole law upon the subject, and that it leaves open some common law defences and some common law liabilities. In view of these general considerations, we are to construe the statute liberally in favor of employees, and we ought to be slow to conclude that indirectly, and without express words to that effect, it

has limited the workman's common law rights most materially in respect to the conditions and time of bringing an action, and the amount which he can recover. For all these provisions stand upon the same footing with regard to the present case. General maxims are oftener an excuse for the want of accurate analysis than a help in determining the extent of a duty or the construction of a statute. But certainly, with such a statute as this, we agree that common law rights are not to be taken away by doubtful implications and affirmative words. *Wilbur* v. *Crane,* 13 Pick. 284, 290. *Barden* v. *Crocker,* 10 Pick. 383, 389. 2 Inst. 200. Com. Dig. *Action upon Statute,* C. *Chapman* v. *Pickersgill,* 2 Wils. 145, 146. *Wilson* v. *West Hartlepool Railway,* 2 DeG., J. & S. 475, 496.

However, instead of following the order of the English act, the Legislature sought to abridge and simplify matters by carrying over the qualifying clause which we have quoted from § 2 of the English act into § 1 of our act, so that it runs, when personal injury is caused to an employee, who is himself in the exercise of due care, etc., by reason of any defect in the condition of the machinery, etc. " which arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer and entrusted," etc., the employee shall have the same right of compensation, and remedies against the employer, as if he had not been an employee, etc.

If we are right in the view which we take of the intention of the Legislature, we should have had less difficulty in discovering it, and in carrying it out, if the language of the English statute had been followed less exactly, and if the transposition just mentioned had not been made. In 1887, it was settled law in Massachusetts that masters were personally bound to see that reasonable care was used to provide reasonably safe and proper machinery, so that, if the duty was intrusted to another and was not performed, the fact that the proximate cause of the damage was the negligence of a fellow servant was no defence. *Gilman* v. *Eastern Railroad,* 13 Allen, 433, 440. *Lawless* v. *Connecticut River Railroad,* 136 Mass. 1. The rule in *Wilson* v. *Merry, ubi supra,* practically, if not in terms, had been modified very much in favor of servants. *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198, 202. Furthermore, the requirement that the

employee should himself be in the exercise of due care, which was left to implication in the English act, is stated explicitly in ours. Thus it falls out that the part of § 1 to which we are referring seems at first sight to add nothing to the common law as previously declared, and by its form has very much the air of a legislative statement of the principle of the cases.

But we should assume that § 1, cl. 1, was nugatory, sooner than admit that it cut down the common law rights of employees under the deceptive form of enlarging them. We certainly do not believe that by combining § 2, cl. 1, of the English act with § 1, cl. 1, it meant to give any new meaning or scope to the two clauses, the words of which are so carefully followed. The intention was merely to abridge the model and make it more compact. As in the original, the reference to negligence is solely for the purpose of qualifying the operation of the other part of the sentence, not for the purpose of codification. The purport of the whole is still only to abolish, perhaps, the defence of implied assumption of risk, and certainly that of negligence of a fellow servant, (*Ashley* v. *Hart*, 147 Mass. 573,) as it was in the English statute, and as is manifestly the case in the second and third clauses of the same section. Were this not so, the cumbrous conclusion, which applies to all the clauses alike, " shall have the same right, etc., as if he had not been an employee nor in the service of the employer," etc., hardly would have been adopted from the English act. If there are no cases for which the first clause is needed, all that is to be said is, that to that extent the Legislature too hastily assumed that the law of Massachusetts was the same as that of England.

We shall not undertake to decide until it is necessary whether § 1, cl. 1, has not an operation in excluding the defence of implied assumption of risk, when the defect, although manifest, is still properly attributable to the negligence of the master or of a person intrusted by him, which is one of the cases held to be covered by the English act. *Yarmouth* v. *France*, 19 Q. B. D. 647. *Thrussell* v. *Handyside*, 20 Q. B. D. 359. Compare *Fraser* v. *Hood*, 15 Ct. of Sess. Cas. (4th series), 178. Neither shall we consider whether the act would apply to cases where by our decisions negligence in making small repairs needed from day to day may still be attributed to a fellow servant. *Johnson*

v. *Boston Tow-Boat Co.* 135 Mass. 209. *McGee* v. *Boston Cordage Co.* 139 Mass. 445. *Moynihan* v. *Hills Co.* 146 Mass. 586. If the act does apply to such cases, there is the stronger reason for saying that its only purpose is to extend the common law liability to the previously excluded cases. And if the object is to make a rule which will reach extremes not touched by the common law, the fact that this is done by a new and broader rule, the terms of which necessarily are wide enough to include the narrower common law principle, does not show an intention to prejudice rights which the statute was not needed to create. Whether or not an action could be maintained under the statute in a case where there is a common law remedy, as assumed in a passage which we have quoted concerning the English act, we need not decide. If the facts warrant a recovery at common law, it is not likely that any plaintiff will wish to rely upon the statute, although when it is uncertain how the facts will turn out it may be necessary and proper to join a count on the statute with one on the common law liability.

For the foregoing reasons we are of opinion that in those cases within the words of the St. of 1887, c. 270, § 1, cl. 1, in which the common law gives an employee a remedy, he still has a right to sue under the same conditions, and to recover damages to the same extent, as if the statute had not been passed. We are also of opinion that, so far as § 1, cl. 1, is concerned, the requirement of notice in § 3, as a condition to maintaining actions "under this act," only applies to those extremes, if any, lying outside the common law rule, but embraced by § 1, cl. 1, unless a case shall arise in which the plaintiff, although he has a remedy at common law, insists on relying upon the statute alone. See the observations on *Goodhue* v. *Dix,* 2 Gray, 181, in *Reynolds* v. *Hanrahan,* 100 Mass. 313, 315.

*Judgment for the plaintiff.*

*J. M. Morton,* for the defendant.
*J. W. Cummings,* for the plaintiff.